UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                    :
IN THE MATTER OF THE *EX PARTE*                     :
APPLICATION OF MARK McDONALD and                    :        Misc. Case No.: _____
DAVID HOLUKOFF FOR AN ORDER TO TAKE                 :
DISCOVERY PURSUANT TO 28 U.S.C. § 1782              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


## MEMORANDUM OF LAW
## IN SUPPORT OF *EX PARTE* APPLICATION
## FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782


### DIAMOND McCARTHY LLP
295 Madison Avenue, 27th Floor
New York, New York  10017
(212) 430-5400

*Attorneys for Applicants*
*Mark McDonald and David Holukoff*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ......................................................................................2

I.     JURISDICTION AND VENUE..........................................................................3

II.    FACTUAL BACKGROUND.............................................................................4

     A.    Reds' Default and NuStar's Demands for Accounting and Bond
           Performance ........................................................................................4

     B.    NuStar's Legal Proceedings Against GISL and REDS .........................6

     C.    The Trinidad Liquidation and Recovery Proceedings .........................6

     D.    Wire Transfers ....................................................................................7

     E.    The Applicants Are Entitled to Recover the Offshore Funds............7

III.    ARGUMENT.....................................................................................................8

     A.    The Application Meets the Statutory Prerequisites for Relief under
           1782.....................................................................................................9

           (i)    The Subpoena Recipients are found in the District. ................9

           (ii)   The discovery is sought for use in a foreign proceeding..........9

           (iii)  The Applicants are interested persons......................................11

     B.    The Court Should Exercise Its Discretion to Grant Relief Because The
           Discretionary *Intel* Factors Weigh In The Applicants' Favor ............11

     C.    The Court Should Grant the Application *Ex Parte* .............................13

IV.    CONCLUSION.................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Brandi-Dohrn v. IKB Deutsch Industriebank AG*, 673 F.3d 76 (2nd Cir. 2012)............................ 8

*Gushlak v. Gushlak*, 486 F. App'x 215 (2d Cir. 2012) ............................................................. 2, 13

*In re Accent Delight Int'l Ltd.*, 869 F.3d 121 (2nd Cir. 2017)................................................. 10, 11

*In re Application of Esses,* 101 F.3d 873 (2nd Cir. 1996) ......................................................... 9, 11

*In re Application of Guy*, No. M 19-96, 2004 WL 1857580 (S.D.N.Y. Aug. 19, 2004)............... 12

*In re Application of Inversiones y Gasolinera Petroleos Venezuela,* 2011 WL 181311 (S.D. Fla.

    Jan. 19, 2011) ..................................................................................................................... 13

*In re* Application of Schmitz, 259 F. Supp. 2d 294 (S.D.N.Y. 2003).............................................. 9

*In re Consellior SAS, Kerfraval Ass'n De Documentation Pour L'industrie Nationale*, No. 13

    MC 34 (WWE), 2013 WL 5517925 (D. Conn. Oct. 2, 2013)................................................. 12

*In re Gianoli Aldunate*, 3 F.3d 54 (2nd Cir. 1993) ......................................................................... 9

*In re Hornbeam Corp.*, 722 Fed.Appx. 7 (2d Cir. 2018)................................................................. 4

*In re Malev Hungarian Airlines*, 964 F.2d 97 (2nd Cir. 1992)...................................................... 8

*In re Servicio Pan Americano de Proteccion, C.A.*, 354 F. Supp. 2d 269 (S.D.N.Y. 2004) .. 11, 12

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ............................. 9, 11, 12, 13

*Mees v. Buiter*, 793 F.3d 291 (2nd Cir. 2015) ............................................................................ 10

## **Statutes**

28 U.S.C. §1331 ............................................................................................................. 4

28 U.S.C. § 1391 ............................................................................................................ 4

28 U.S.C. § 1782 ................................................................................................... *passim*

28 U.S.C. § 1782(a) ..................................................................................................... 4,8

## **Other Authorities**

S. Rep. No. 1580 ............................................................................................................ 11

Applicants Mark McDonald and David Holukoff (together the "Applicants"), by and through their undersigned counsel, Diamond McCarthy, LLP, respectfully submit this memorandum of law in support of their ex *parte* application for discovery pursuant to 28 U.S.C. § 1782 (the "Application").[1]

## PRELIMINARY STATEMENT

This Application seeks a routine order authorizing intermediary bank discovery from certain New York banks for use in a foreign proceeding pursuant to 28 U.S.C. § 1782. In short, the requested relief is for the purpose of obtaining limited, but important, discovery for use in a liquidation proceeding before the High Court of Justice of Trinidad and Tobago (the "Trinidad Court"). Applicants are the court-appointed Joint Official Liquidators ("JOLs") of REDS Caribbean, Ltd. ("REDS"), a Trinidad and Tobago company, before the Trinidad Court (the "Liquidation Proceeding").

Applicants have received information from multiple sources associated with REDS and REDS' accountants indicating that wire transfers were made from various REDS accounts and the accounts of REDS affiliates and principals that may, on further investigation supported by this Application, transpire to be inconsistent with Trinidad law. At a minimum, Applicants require the information sought by this Application to fully evaluate said transfers. The Applicants believe discovery in this District will aid in gathering a fuller understanding of the REDS' affairs, enable Applicants to understand whether assets have been misappropriated from REDS, and determine any steps needed to recover those assets, as the JOLs are authorized to do by the Trinidad Court's Order appointing the JOLs

The instant Application is necessary because the Discovery Targets, the majority of

---

[1] "[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte." *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) (summary order) (collecting cases).

2

which are REDS corporate directors and officers or individuals who have held leadership positions in REDS or its affiliates, have to date failed to provide complete disclosure to Applicants of the books and records of the company and in particular, a full accounting of the use of assets that originated from REDS' sole known creditor, NuStar Terminals, N.V. ("NuStar") who currently holds a Texas judgment against REDS in the principal amount of $35,372,130.00 together with pre- and post-judgment interest. Applicants continue to communicate with all relevant personnel connected with the REDS to recover books and records. NuStar has conveyed to Applicants its concerns regarding the misappropriation of funds from REDS. The discovery sought by Applicants from the intermediary banks will aid in gathering a fuller understanding of REDS' affairs, enable Applicants to understand whether assets have been misappropriated from REDS, and determine any steps needed to recover those assets.

Further, there is relevant evidence in the form of bank records concerning payments made by NuStar to REDS and its affiliates that REDS and its affiliates transferred money in and through this District. The Applicants are seeking to establish whether any of the United States Dollar denominated transfers made by REDS and its affiliates were a misappropriation, or illegal transfer, of funds. It appears likely that the records of these wire transactions are held by banks in this District and that these records will be highly relevant and probative in the Trinidad Liquidation proceedings. For the reasons set forth below, Applicants respectfully request that the Court grant the Application.

## I.        JURISDICTION AND VENUE

Jurisdiction and venue are proper as this Application seeks documents in the possession, custody, or control of certain banks ("New York Banks"), each of which is found in this

District.[2]  28 U.S.C. § 1331, § 1391 § 1782(a);  *In re Hornbeam Corp.*, 722 Fed.Appx. 7 (2d Cir. 2018) (summary order) (affirming grant of § 1782 discovery from intermediary banks and other entities within the Southern District of New York).

## II.    FACTUAL BACKGROUND

### A.    Reds' Default and NuStar's Demands for Accounting and Bond Performance

On October 25, 2016, NuStar and REDS entered into a Master Work Agreement for the refurbishment of a single point mooring system and undersea pipeline in St. Eustatius (the "Project").   *See* Diamond Decl. ¶ 11.  On November 23, 2016, REDS, by and through Robert Charbonne, obtained a Performance Bond for the Project from United Kingdom-based Global Insurance Services Limited ("GISL"), by and through its managing director Raymond McMillan. *See id.* ¶ 12.  On December 13, 2016, and January 24, 2017, Avant Garde Insurance Services Ltd. ("Avant Garde") issued receipts of payment to REDS for a Performance Bond issued by GISL for which REDS made payments of $1,108,285.90, $1,732,377.43 and $449,706.01 in Trinidadian dollars. *See id.* ¶ 12.

In total, NuStar paid REDS $38,204,309.09 USD for the Project pursuant to the Master Work Agreement and a related Purchase Order. *See id.* ¶ 14.

On October 13, 2017, NuStar discovered that REDS had failed to pay most of the subcontractors on the Project. *See id.* ¶ 15.  On October 19, 2017, REDS notified NuStar that it had defaulted and abandoned the Project leaving the Project unfinished and defaulting on outstanding payables to subcontractors of approximately $8,000,000 USD. *See id.* ¶ 16.

On October 20, 2017, and November 21, 2017, NuStar made demands on the Performance Bond to GISL.  *See id.* ¶ 17.  GISL's liquidators have also attempted to contact

---

[2] Applicants seek discovery from the following banks: Wells Fargo Bank, Bank of Baroda, and The Federal Reserve Bank of New York.

4

Avant Garde regarding for performance. *See id.*

GISL's Director Raymond McMillan acknowledged receipt of the demands and indicated that GISL would process the demands on November 22, 2017. *See id.* ¶ 18. On January 11, 2018, in response to a request by NuStar for an audit, REDS' counsel indicated that REDS was unable to provide NuStar with access to its banking information, which was at that time controlled by "either Mr. Robert Charbonne or Miss Tricia Charbonne-Downes." *See id.* ¶ 19.

On January 24, 2018, in an Extra-Ordinary General Meeting, REDS' directors passed a resolution requiring Mr. Charbonne "to produce all documentation regarding Reds, NuStar and bank accounts, i.e. returned cheques, vouchers, printed accounts and cheque books" with regard to the Project. *See id.* ¶ 20. Also on January 24, 2018, Robert Charbonne and Tricia Charbonne-Downes were removed from their positions in REDS, and Dayne Harford and Ryan Harford were appointed directors. *See id.* ¶ 21.

NuStar's auditors were permitted to enter REDS' office location in Trinidad, but upon entry, discovered that the office had been vacated entirely. *See id.* ¶ 22. Thereafter, REDS' principals refused to permit NuStar entry into any other REDS office location, in the British Virgin Islands or elsewhere. *See id.* ¶ 23.

On June 18, 2018, REDS' accountants indicated that Mr. Charbonne and Ms. Charbonne-Downs "were evasive and unwilling . . . to provide the hard copy records for [the accountants'] review" and that they were informed that REDS' "accounting laptop" had "crashed and the staff were directed to clear out the offices of all files, computers and records" which were "taken to the residence of the former principals to safe guard from review. . ." *See id.* ¶ 24.

On August 30, 2018, Goliath Offshore Services, Ltd. ("Goliath") was incorporated in Trinidad by Dayne Harford. *See id.* ¶ 25. Goliath performs substantially the same services as

REDS and is believed to be in possession of assets pertaining to REDS. *See id.*

The Applicants are continuing to gather information in relation to REDS' accounting practices and financial transfers from Mr. Charbonne and Mr. Randall Harford; however the information received to date is incomplete and insufficient to establish that the Discovery Targets have undisclosed cash assets which rightfully pertain to REDS. *See id.* ¶ 26.

**B.     NuStar's Legal Proceedings Against GISL and REDS**

On July 18, 2018, NuStar obtained a final default judgment against GISL in the High Court of Justice Business and Property Courts England and Wales in the amount of 8,977,360.43 British pounds, or $12,160,732.44 USD. *See id.* ¶ 27.

As of June 2018, GISL had vacated its premise and Mr. McMillan had vacated his personal residence. *See id.* ¶ 28. NuStar has diligently searched for GISL and Mr. McMillan but, to date, NuStar has been unable to execute the judgment. *See id.*

On August 1, 2018, NuStar obtained a final default judgment against REDS in Harris County, Texas, in the United States in the amount of $35,372,130.00 USD plus pre-judgment interest in the amount of $324,648.32 USD and post-judgment interest that continues to accrue at the rate of 5.00 percent per annum from the date of the final default judgment until all amounts are paid in full to NuStar. *See id.* ¶ 29.

**C.     The Trinidad Liquidation and Recovery Proceedings**

The Applicants were appointed as JOLs of REDS on February 26, 2019, after NuStar commenced wind-up proceedings against REDS in the Trinidad Court on January 29, 2019. *See id.* ¶ 30. Upon the Applicants' appointment as JOLs, the Applicants have uncovered indicia of possible transactions entered into by REDS, its former directors and associated entities, potentially for the purposes of removing assets outside the reach of REDS' principal

creditor, NuStar. *See id.* ¶ 31.  Presently, NuStar is the sole known creditor of REDS. *See id.* ¶ 32. Based on current exchange rates, REDS is indebted to NuStar for more than US $37 million. *See id.*

**D.      Wire Transfers**

The Applicants have obtained limited information from individuals associated with REDS and REDS' accountants that wire transfers were made from various REDS accounts and the accounts of REDS affiliates that the Applicants are concerned may conflict with Trinidad preferential transfers statutes.  *See id.* ¶ 33.  Given the evidence uncovered to date, the Applicants believe discovery in this District could produce evidence of preferential transfers, expatriation and/or concealment of funds which may support a legal claim that the Applicants are entitled to recover those funds under the Appointment Order. *See id.* ¶ 34.

**E.      The Applicants Are Entitled to Recover the Offshore Funds**

The Applicants may, with support from evidence recovered under this Application,  seek a judicial determination that they are entitled to take title to illegally or preferentially transferred funds.  *See id.* ¶ 35_.  The Applicants already have retained attorneys in Trinidad to advise them on the Applicants' contemplated claim in Trinidad. *See id.* ¶ 36. By this Application they seek evidence to evaluate the appropriateness of any contemplated claim before the Trinidad Court, potentially including a motion seeking a judicial adjudication that certain transfers were preferential and thus were invalid. *See id.* ¶¶ 37.

This Application is made to obtain further discovery of bank account records and wire transfer records of payments made or received by the Discovery Targets. *See id.* ¶ 38. This will be important evidence for the Applicants' contemplated claim in Trinidad and Tobago for recovery of preferential transfers. *See id.* The Applicants do not however expect the Subpoena Recipients themselves to be defendants in the contemplated claim in Trinidad. *See id.* ¶ 46.  As

such, the Applicants seek discovery within the Southern District of New York to obtain evidence regarding the existence and transfers of funds concerning to which the Applicants are legally entitled or regarding which Applicants may seek a ruling from the Trinidad Court resolving their legal entitlement. *See id.* ¶ ¶ 39-43.

Further, the Subpoena Recipients and Discovery Targets are beyond the jurisdictional reach of the Trinidad Court for purposes of discovery. *See id.* As a result, the Applicants are unable to obtain the full scope of needed discovery within Trinidad due to the extraterritorial location of the Subpoena Recipients and some of the Discovery Targets. *See id.*

## III.   ARGUMENT

Title 28, United States Code, Section 1782 Section 1782") authorizes discovery by litigants or other "interested persons" for use in proceedings before foreign and international tribunals. In pertinent part, it states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. §1782(a).

The twin goals of the statute are "to provide equitable and efficacious discovery procedures in the United States courts for the benefit of tribunals and litigants involved in litigation with international aspects and to encourage foreign countries by example to provide similar means of assistance to our courts." *Brandi-Dohrn v. IKB Deutsch Industriebank AG*, 673 F.3d 76, 80 (2nd Cir. 2012) (internal quotation omitted) (quoting *In re Malev Hungarian Airlines*, 964 F.2d 97, 99-100 (2nd Cir. 1992)). "In pursuit of these twin goals, the statute has,

over the years, been given increasingly broad applicability." *Brandi-Dohrn*, 673 F.3d at 80 (quoting *In re Gianoli Aldunate*, 3 F.3d 54, 57 (2nd Cir. 1993)).

Here, the Court should issue an order granting the Applicants' *ex parte* Application for discovery because the Applicants have met the statutory prerequisites for relief under Section 1782 and because the factors to be weighed by the Court in exercising its discretion balance in favor of discovery.

### A.   The Application Meets The Statutory Prerequisites for Relief under Section 1782

A Court has the authority to grant a discovery request pursuant Section 1782 if the following statutory requirements are met: "(1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or 'any interested person.'" *In re Application of Esses,* 101 F.3d 873, 875 (2nd Cir. 1996); *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246 (2004). Each of these statutory requirements is met here.

### i.   The Subpoena Recipients are found in this District.

First, the Subpoena Recipients are found in this District. *See In re Application of Schmitz,* 259 F. Supp. 2d 294, 296 (S.D.N.Y. 2003) ("Application of section 1782 does not involve an analysis of . . . why a respondent has the documents. It is sufficient that respondents reside in this district, as they concededly do."). Namely, the Subpoena Recipients are financial institutions, banks, and a wire-transfer clearing house that regularly conduct business in this District, maintain their headquarters in this District, and/or are incorporated in New York. *See* Diamond Decl. ¶ 44.

9

ii.     **The Discovery is Sought for Use in a Foreign Proceeding.**

As to the second requirement, the discovery sought must be "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. §1782(a); *see Mees v. Buiter*, 793 F.3d 291 (2nd Cir. 2015) (authorizing discovery for use in a contemplated Dutch proceeding). The "for use" requirement is met where the applicant is, or will be, a party to a foreign proceeding with the procedural right to submit evidence, without regard as to whether the evidence will ultimately be admissible in the foreign tribunal. *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2nd Cir. 2017) (finding the "for use" statutory requirement met where the applicants were "parties to that [foreign] proceeding," and "retain[ed] the procedural right to submit the requested documents to the magistrate overseeing the investigation").

Here, the Liquidation Proceeding is not just contemplated but actually pending, and it thus qualifies as "a proceeding in a foreign or international tribunal." Further, in this case, the request for judicial assistance seeks evidence to be used in aid of the Liquidation Proceedings. To gather this important information, the Applicants have already obtained certain discovery as a result of demands issued to REDS' principals and voluntary production of limited information from third party subcontractors involved in the project.   Applicants have also commenced related discovery efforts in Trinidad and elsewhere in the Caribbean. *See* Diamond Decl. ¶ 40. The evidence sought in this District is different than, and will supplement, the evidence the Applicants have already collected and are in the process of collecting in other jurisdictions. *See id*. ¶ 41. This application is aimed at obtaining new evidence from financial institutions, routing banks, and a clearing house which will show where funds were transferred and to whom. *See id*. ¶ 42.

10

Additionally, because the Liquidation Proceedings have already been commenced, the Applicants have the procedural right to present evidence, including the evidence gathered here, to the Trinidad Court in support of their claims. *See id.* ¶ 43. Accordingly, the evidence sought here meets the "for use" requirement. *See In re Accent Delight Int'l Ltd.*, 869 F.3d at 132.

### iii.     The Applicants are Interested Persons.

As to the third requirement, the Applicants qualify as "interested person[s]" because they are the court-appointed Joint Official Liquidators in the Liquidation Proceeding. *See Intel*, 542 U.S. at 256 & 258 ("No doubt litigants are included among, and may be the most common example of, the 'interested person [s]' who may invoke § 1782"); *In re Application of Esses*, 101 F.3d at 875 (citing the legislative history of Section 1782 at S. Rep. No. 1580, 88th Cong., 2d Sess., at 8 (1964)).

For these reasons, this Application meets the statutory requirements for relief under Section 1782.

### B.     The Court Should Exercise Its Discretion To Grant Relief Because The Discretionary *Intel* Factors Weigh In The Applicants' Favor

Once, as here, an applicant meets the Section 1782 statutory criteria, the Court should determine whether to exercise its discretion to permit the discovery. District courts have broad discretion in granting judicial assistance to foreign tribunals to obtain evidence for use in a foreign proceeding, and should do so to "advance the twin aims of [Section 1782], which are to provide efficient means of assistance to participants in international litigation in our federal courts and to encourage foreign countries by example to provide similar means of assistance to our courts." *See In Re Servicio Pan Americano de Proteccion, C.A.*, 354 F. Supp. 2d 269, 273 (S.D.N.Y. 2004) (internal quotations omitted). In deciding whether to exercise its discretion to permit the Section 1782 discovery, the Court should consider: (1) whether "the

11

person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) whether the request is "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the discovery is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65. Here, each of these factors supports granting the Application and favors allowing the requested relief for the following reasons.

First, the Subpoena Recipients are not parties to the Liquidation Proceeding and are not expected under any circumstance to be parties to or otherwise appear in the Liquidation Proceeding. *See* Diamond Decl. ¶ 47. As such, discovery pursuant to Section 1782 in this circumstance is precisely what courts have held the statute is for. *See, e.g., In re Application of Guy*, No. M 19-96, 2004 WL 1857580, at *2 (S.D.N.Y. Aug. 19, 2004) (authorizing discovery into a non-party and noting that Section 1782 discovery may be the only way in which an interested party can obtain discovery from non-parties that are not subject to the foreign tribunal's jurisdiction) (citing *Intel,* 542 U.S.. at 264); *In re Consellior SAS, Kerfraval Ass'n De Documentation Pour L'industrie Nationale*, No. 13 MC 34 (WWE), 2013 WL 5517925, at *2 (D. Conn. Oct. 2, 2013) (granting Section 1782 application in part because respondents were not parties to French proceeding, "and therefore, the French Court cannot order them to produce discovery").

Second, the Court may consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *In Re Servicio Pan Americano de Proteccion*,

354 F. Supp. 2d at 274 (quoting *Intel,* 124 U.S. at 264). Here, the Applicants are not aware of any law, rule of evidence or procedure in Trinidad and Tobago or elsewhere that conflicts with the provision of assistance by United States courts, and the Applicants are not aware of any basis to believe that the Trinidad Court would not be receptive to the assistance in this instance. *See* Diamond Decl. ¶ 48.  Instead, paragraph 22 of the Trinidad Court's Order appointing the JOLs expressly authorizes the JOLS to seek the assistance of foreign courts with regard to tracing of assets. *See id.*

Third, the Applicants are not using this proceeding to circumvent foreign proof gathering limits in Trinidad and Tobago, or any limits imposed by the laws of the United States. *See Intel*, 542 U.S. at 265.

Finally, the Applicants' discovery requests are not "unduly intrusive or burdensome," *Intel*, 542 U.S. at 265, focusing as they do upon evidence relevant to identifying the existence and movement of the REDS' funds. The Applicants are seeking records from financial institutions that maintain such records in the regular course of business and that routinely produce such records in response to U.S. discovery requests. *See In re Application of Inversiones y Gasolinera Petroleos Venezuela*, 2011 WL 181311 at *13 (S.D. Fla. Jan. 19, 2011) (allowing discovery under Section 1782 absent "specific showing" of burden or intrusive nature of request by respondent).

Accordingly, the Court should grant the Application.

## C.    The Court Should Grant the Application *Ex Parte*

"[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*." *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2nd Cir. 2012). Here, NuStar and the Applicants have already uncovered evidence that REDS and its

affiliates were prone to covering up their transactions as they have explicitly refused to provide such information to NuStar and the Applicants. As such, the Applicants make this Section 1782 Application without notice because they believe that if REDS or its principals were to learn of these proceedings, they would take steps to further dissipate assets or place them beyond the reach of the Applicants. In addition, there are potential criminal sanctions for the principals of REDS if they were found to have offshore assets that were not disclosed to the Applicants, so they would be further incentivized to prevent the Applicants from discovering such assets. Accordingly, the Applicants request that the Court grant this Application on an *ex parte* basis.

## IV.   CONCLUSION

In summary, consistent with precedent cited above, the facts in the present matter satisfy the statutory requirements of 28 U.S.C. § 1782 and the discretionary factors set forth by the Supreme Court in *Intel*. Moreover, granting the requested discovery would further the Statute's twin aims. Therefore, Applicants respectfully request that the Court grant the Application as well as other relief that the Court finds just and proper.

Dated: New York, New York
        May 1, 2019

Respectfully submitted,

**DIAMOND McCARTHY LLP**
*Attorneys for Applicants Mark McDonald
and David Holukoff*

By: _____
     Allan B. Diamond
     Lon J. Seidman
295 Madison Avenue, 27th Floor
New York, New York  10017
(212) 430-5400
*adiamond@diamondmccarthy.com*
*lseidman@diamondmccarthy.com*

14